# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE CELLULAR TELEPHONE PARTNERSHIP LITIGATION | ) COORDINATED<br>) C.A. No. 6885-VCL |

## MEMORANDUM OPINION

Date Submitted: August 15, 2017
Date Decided: August 29, 2017

Lori W. Will, WILSON SONSINI GOODRICH & ROSATI, P.C., Wilmington, Delaware; *Attorney for Special Discovery Master.*

Marcus E. Montejo, John G. Day, PRICKET, JONES & ELLIOTT, P.A., Wilmington, Delaware; *Attorneys for Certain Plaintiffs.*

Norman M. Monhait, ROSENTHAL MONHAIT & GODDESS, P.A., Wilmington, Delaware; Thomas R. Ajamie, Dona Szak, David S. Siegel, Ryan van Steenis, AJAMIE LLP, Houston, Texas; Michael A. Pullara, Houston, Texas; *Attorneys for Certain Plaintiffs.*

Todd C. Schiltz, DRINKER BIDDLE & REATH LLP, Wilmington, Delaware; Maurice L. Brimmage, Jr., AKIN GUMP STRAUSS HAUER & FELD LLP; William M. Connoly, DRINKER BIDDLE & REATH LLP, Philadelphia, Pennsylvania; *Attorneys for Defendants.*

**LASTER, V.C.**

Special Discovery Master Jim Timmins is in the final stages of drafting a report that this court asked him to prepare. Before completing his report, he would like to review eight documents that the defendants (collectively, "AT&T") withheld as privileged. He believes, but is not certain, that the documents may be relevant to his analysis. He proposes to review the documents *in camera* to determine whether they are relevant. If they are not relevant, then he will not consider them further and the documents will not be produced. If they are, then AT&T has agreed to produce the documents to Timmins and the plaintiffs, subject to an order pursuant to Delaware Uniform Rule of Evidence 510(f) that preserves any applicable privileges for purposes other than this litigation.

The plaintiffs object to this approach. They insist that if Timmins looks at the documents *in camera*, privilege will be waived. They also object that if Timmins concludes that the documents are not relevant, then Timmins' decision will be final, even though he is a master whose decisions must be reviewed *de novo* by a constitutional judge.[1]

In my view, this court has the authority pursuant to Rule 510(f) to authorize the procedure that Timmins has proposed. Rule 510(f) states: "Notwithstanding anything in these rules to the contrary, a court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other proceeding." This subsection is a recent addition the Delaware Uniform Rules of Evidence, and there does not appear to be any Delaware

---

[1] *See DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

1

state court authority interpreting it. The rule was modeled, however, on a comparable federal rule, so federal authorities interpreting the analogous rule are persuasive.[2]

Authorities addressing the federal analog—Federal Rule of Evidence 502(d)—teach that it was adopted to facilitate "cost reduction and predictability."[3] The advisory committee notes make clear that the drafters anticipated its inclusion in pre-discovery orders so that litigants could produce batches of information without having to engage in costly privilege reviews. But that was not the only possible use, and the drafters left the rule broad so that "a federal court may order that disclosure of privileged or protected information 'in connection with' a federal proceeding does not result in waiver."[4]

To date, the federal courts have deployed Rule 502(d) in creative ways to promote judicial economy. For example, courts have used it to allow parties to take a "quick peek" at allegedly privileged information to confirm the accuracy of privilege logs without the

---

[2] *See Atkins v. State*, 523 A.2d 539, 542 (Del. 1987); *see also Perry v. Berkley*, 996 A.2d 1262, 1267 (Del. 2010).

[3] Edwin M. Buffmire, *The (Unappreciated) Multidimensional Benefits of Rule 502(d): Why and How Litigants Should Better Utilize the New Federal Rule of Evidence*, 79 Tenn. L. Rev. 141, 155 (2011); *see also* Fed. R. Evid. 502 advisory committee's notes.

[4] Fed. R. Evid. 502 advisory committee's notes; *see also Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, 2009 WL 464989, at *4 (N.D. Tex. Feb. 23, 2009) (noting the plain language of the Rule extends beyond inadvertent disclosure); Michael Correll, *The Troubling Ambition of Federal Rule of Evidence 502(d)*, 70 Mo. L. Rev. 1031, 1046 (2012) ("Congress failed to provide any guidance as to what boundaries, if any, circumscribe Rule 502(d).").

need for further judicial involvement.[5] At least one court relied on the rule when declining to stay an order compelling production of privileged documents pending appeal. The court reasoned that if the appellate court ultimately determined that some of the documents were privileged and should not have been produced, a Rule 502(d) order could be entered to remedy any potential harm.[6] In short, the plain language of the rule and its use to date suggest that courts can and should invoke Rule 510(f) to fashion solutions to otherwise difficult discovery problems.

One problem here is that AT&T does not want to waive privilege inadvertently, either by providing the documents to Timmins or by producing them to the plaintiffs. Rule 510(f) appears designed to solve precisely this problem. This court can and will enter an order pursuant to Rule 510(f) which provides that neither type of production will work a broader waiver of the privilege.

A second problem is the plaintiffs' concern that Timmins should not receive evidence from AT&T that they have not seen. But this problem is inherent in *in camera* review, which relies on a neutral decision maker, usually the court itself, to examine documents and make determinations. Timmins is a neutral decision maker who can conduct

---

[5] *See, e.g., D'onofrio v. SFX Sports Gp., Inc.*, 2010 WL 3324964, at *3 (D.D.C. Aug. 24, 2010).

[6] *Jicarilla Apache Nation v. United States*, 91 Fed. Cl. 489, 493-94 (Fed. Cl. 2010).

*in camera* review in the first instance. Other discovery masters have conducted *in camera* reviews.[7] So can Timmins.

The final problem is the plaintiffs' concern that Timmins' decision on relevance will be unreviewable and hence a final determination that exceeds his powers as a special discovery master. This problem can be addressed by requiring Timmins to include in his report an explanation for his conclusion that documents were not relevant, should he indeed reach that outcome. His explanation should not go into so much detail as to reveal the substance of the documents themselves, but it should convey the substance of his analysis to a reviewing court. The plaintiffs can evaluate that explanation and decide whether to take exception to it, just as they can with other aspects of the report. If necessary, this court will examine the documents *in camera* as well.

Timmins' motion is granted, subject to the clarification that if Timmins determines that the documents are not relevant, he will include a brief explanation for that determination in his report.

---

[7] *See, e.g., Pontone v. Milso Indus. Corp.*, 2014 WL 2439973, at *17 (Del. Ch. May 29, 2014) (reviewing *de novo* a special master's determination of privilege after reviewing documents *in camera*); *King v. Deloitte LLP*, 2010 WL 3489735, at *5 (Del. Ch. Sept. 7, 2010) (suggesting "*in camera* review by the Court of a Special Master may be the most efficient solution" for discovery disputes); *NACCO, Indus., Inc. v. Applica Inc.*, 2010 WL 3220676, at *1 (Del. Ch. Aug. 10, 2010) (considering "appoint[ing] a Special Master to review some quantum of documents *in camera*"); *Darnielle v. Santa Fe Indus., Inc.*, 1980 WL 258074, at *1 (Del. Ch. Oct. 9, 1980) ("the most efficacious way to move this case forward is for a special master to be appointed to examine such documents in camera").